UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

ANDREW NOVAK,

          Defendant.

Criminal Case No. 10-220 (TFH)

## MEMORANDUM OPINION

Pending before the Court are pro se defendant Andrew Novak's (1) Motion to Set Aside, Vacate, and Reverse Judgment of Conviction, pursuant to 28 U.S.C. § 2255 [ECF No. 25], and (2) Motion for an Evidentiary Hearing [ECF No. 40]. Defendant seeks to withdraw his guilty plea to a single count of willfully making and subscribing a false federal income tax return in violation of 26 U.S.C. § 7206(1), arguing that counsel's ineffective assistance rendered defendant's guilty plea not voluntary and intelligent. Upon careful consideration of defendant's motion under section 2255, the government's response, defendant's reply, and the entire record herein, the Court will deny both motions for the reasons provided below.

"[A] claim that the ineffective assistance of counsel rendered a plea not voluntary and intelligent must be evaluated under the [two-part] test for ineffective assistance set forth in *Strickland v. Washington,* 466 U.S. 668 [] (1984)." *United States v. Hanson,* 339 F.3d 983, 990 (D.C. Cir. 2003) (citing *Hill v. Lockhart,* 474 U.S. 52, 58 (1985)). "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687. As to counsel's performance, the defendant must overcome a "strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance" given the totality of the circumstances. *Id.* at 689. As to prejudice in the context of a challenge to a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "Unless a defendant makes both showings," the claim will be denied. *Strickland*, 466 U.S. at 687.

The Court initially observes the following. When defendant signed the government's plea offer, he also waived indictment, waived his right to trial by jury, and signed a Statement of Offense in which he certified "under penalties of perjury that the facts recited within the Statement of Offense are true and correct." Statement of Offense 5 [ECF No. 9]. According to the Statement of Offense, beginning in 2002 and continuing through 2007, defendant and a friend engaged in a series of transactions as part of a scheme to steal and misapply funds from the advertising company that employed defendant. *Id.* at 1. Under the scheme, defendant directed his friend, who owned and operated a consulting company, to submit "Letters of Intent for Services" to the advertising company for services that would never be provided. *Id.* Next, defendant generated fictitious invoices, which were submitted to the advertising company, causing it to issue checks to the consulting company as payment for the fictitious services. *Id.* at 1-2. The friend then wrote checks from the consulting company's business account to defendant, representing approximately 90 percent of the proceeds generated from the fictitious invoices. *Id.* at 2. The total income defendant received through the scheme was $2,321,764. *Id.* at 3. Defendant knew he was required by law to declare this income on his federal income tax returns,

3

but he chose not to do so and instead submitted false income tax returns during this period. *Id.* at 2-3. The resulting tax loss to the Internal Revenue Service ("IRS") totaled $814,744. *Id.* at 3.

At his plea hearing, defendant was placed under oath and partook in a thorough colloquy with the Court. Sept. 9, 2010 Tr. of Plea 5 [ECF No. 35-2]. The Court found defendant competent to enter a plea after eliciting, among other things, that defendant was 43 years old, college educated, and able to understand the proceedings. *Id.* at 5-6. Defendant indicated he was satisfied with defense counsel's work. *Id.* at 7. After the Court provided a detailed account of the Statement of Offense and the government's plea offer, defendant affirmed that the facts contained in the Statement of Offense were true and that he understood both the plea offer and the rights he was waiving. *Id.* at 5-23. The Court concluded defendant was voluntarily and knowingly pleading guilty, and accepted defendant's guilty plea. *Id.* at 23-24.

Prior to sentencing, defendant was interviewed by a United States Probation Officer who prepared a Presentence Investigation Report ("Presentence Report"). "[D]uring the presentence interview, defendant agreed with the conduct described in the Statement of Offense as presented to the Court prior to his guilty plea" and he "accept[ed] responsibility." Presentence Report 7 [ECF No. 22]. In preparation for his sentencing, defendant through counsel submitted a Memorandum In Aid of Sentencing, in which defendant again indicated that he accepted responsibility for his criminal conduct and, notably, informed the Court that he repaid the diverted funds to the advertising company and began to repay the IRS. Def.'s Memo. In Aid of Sentencing 5-6, 21 n.19 [ECF No. 16]. Additionally, defendant submitted what the Court deemed to be "lengthy materials," including a "rather remarkable number of character letters" and defendant's own letter to the Court accepting responsibility for his criminal conduct. *See* Def.'s Letter to the Court 1-4 [ECF No. 16-6].

At sentencing, after the Court heard from defense counsel and the government, defendant personally addressed the Court and again accepted responsibility for his criminal conduct, stating "I'm responsible for my behavior and for stealing money that wasn't mine. I only blame myself. I was raised to tell the truth and to admit to my mistakes. . . . Plain and simple, there are no excuses. I committed a crime, and I am ashamed of myself for doing so." Dec. 6, 2010 Tr. of Sentencing 4-20 [ECF No. 35-3]. The Court considered the factors identified in 18 U.S.C. § 3553(a), including defendant's expression of remorse and efforts to make restitution after he was caught, and ultimately sentenced defendant to a term of 18 months of imprisonment and 12 months of supervised release, which reflected a downward variance from the 30 to 37 months of imprisonment recommended under the Sentencing Guidelines. *Id.* at 20-28.

Now, in support of his motion under section 2255, defendant asserts that counsel rendered ineffective assistance on account of two failings. Def.'s Memo. of Arguments & Authorities in Support of Mot. to Vacate Sentence Pursuant to 28 USC § 2255 ("Def.'s Memo.") 12-22 [ECF No. 25-1]. First, he asserts that counsel failed to investigate the defense that defendant committed no 'scheme' to defraud anyone, as there were no victims because defendant returned the diverted funds to the advertising company, which suffered no losses. *Id.* at 12-20. Second, he asserts that counsel failed to argue the defense that defendant was not guilty of failing to report and pay income tax because the income the government attributed to him was actually the advertising company's income. *Id.* at 20-22. As a result of counsel's ineffective assistance, defendant continues, his guilty plea was neither knowing nor voluntary. *Id.* at 22-24.

Defendant's assertions reflect, at best, his confusion regarding the offense to which he pleaded guilty and, at worst, a strained and belated attempt to assert his innocence. First, the Court reminds defendant that, as noted in the Presentence Report, "[t]he victim in this case is

5

the Internal Revenue Service." Presentence Report 6. The government did not prosecute defendant for defrauding the advertising company, but rather, it prosecuted him for making false statements on his federal income tax returns, which resulted in a tax loss for the IRS in the amount of $814,744.53. Information 1-4 [ECF No. 1]. Moreover, the fact that defendant ultimately returned the diverted funds to the advertising company after he was caught does not retroactively excuse defendant's failure to declare the diverted funds on his federal income tax returns. As defendant concedes, he deposited and continuously controlled the diverted funds in his personal bank account for a period of approximately five years, returning it only after federal authorities interrupted his scheme. *See* Def.'s Memo. at 5 ("The [diverted funds] were simply set aside, in a place where they were readily available to [the advertising company] when [defendant], the creator of such profits, deemed it prudent. . . . [Defendant's] determination of when was 'prudent' to reveal his strategy was interrupted by the FBI investigation."); Def.'s Decl. ¶ 9 [ECF No. 25-2] ("The money market account where the diverted profits were deposited was my account, and . . . commingled with my own funds . . . ."); *see generally Rutkin v. United States*, 343 U.S. 130, 137 (1952) ("An unlawful gain, as well as a lawful one, constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it. That occurs when cash . . . is delivered by its owner to the taxpayer in a manner which allows the recipient freedom to dispose of it at will[.]").

6

To the extent defendant suggests counsel improperly focused his efforts on negotiating a plea agreement rather than on investigating the defenses noted above,[1] defendant apparently ignores the fact that by the time he retained counsel he had already confessed to federal authorities. As defendant explains in the declaration attached to his motion under section 2255,

> [a]fter speaking with the F.B.I. I took the advice of people close to me, and I looked for and acquired legal representation. I did not think that I needed a lawyer because I had not committed a crime. I spoke freely with the F.B.I. rather than exercising my right to remain silent. I cooperated in the investigation, and it was the information I provided and my explanation of the records involved and the spread sheets I personally prepared that would eventually result in all involved becoming aware of what occurred.

Def.'s Decl. ¶ 12 [ECF No. 25-2]. Indeed, defendant continued to confess his actions even after he retained counsel, apparently against his counsel's advice: "I requested a face-to-face meeting with my business partner to the chagrin [of] my attorney so that I could inform her what I had done[.]" Def.'s Letter to the Court 2 [ECF No. 16-6].

In short, even assuming, as defendant contends, that counsel chose not to investigate or argue the defenses that (1) defendant had committed no scheme to defraud anyone because the advertising company suffered no losses and (2) the income the government attributed to him was actually the advertising company's income, the Court concludes that counsel's decisions not to pursue such implausible defenses, and to instead focus on negotiating a plea agreement,

---

[1] In the declaration defendant attached to his motion under section 2255, defendant states, in pertinent part, the following about counsel:

> Everyone told me what a fine job he had done. I have seen his file, and it is clear he spent time on the case. However, one thing remains clear. . . . He never understood that he was representing a person who had not committed a crime, or if he did understand, it was not as important as it was to "get the best deal possible."

Novak Declaration ¶ 27.

were not "outside the wide range of professionally competent assistance" under the totality of the circumstances in this case. *Strickland*, 466 U.S. at 960; *see id.* at 961 ("[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable."); *cf. United States v. Hanson*, 339 F.3d 983, 991 (D.C. Cir. 2003) (concluding "any competent attorney would . . . have advised [defendant] that he stood little chance of obtaining an acquittal at trial [where] [t]he evidence of [the offense] charged was overwhelming, while [defendant's] only defense . . . was exceedingly weak."). Accordingly, defendant fails to demonstrate "that counsel's performance was deficient." *Strickland*, 466 U.S. at 687.

Furthermore, even if defendant could show that counsel was deficient for the reasons he asserts, he still would need to demonstrate prejudice. However, given the strength of the government's evidence in light of defendant's voluntary confessions and disclosures, the weakness of his alleged defenses, and the additional exposure defendant would have faced had he elected to be prosecuted by indictment and proceed to trial,[2] defendant benefited greatly from his decision to plead guilty. The Court, therefore, concludes there is no reasonable probability that, but for counsel's alleged deficiencies, defendant would not have pleaded guilty and would have insisted on going to trial. Accordingly, defendant fails to demonstrate prejudice. *See Hill*, 474 U.S. at 59; *Strickland*, 466 U.S. at 687.

---

[2] The Court observes that although the government's single-count Information was based on defendant's willfully making and subscribing a false federal inform tax return for the year 2004, Information 1-4, the Statement of Offense provided that defendant knowingly submitted false income tax returns for the years 2002 through 2007, Statement of Offense 2-3.

In sum, defendant fails to make either showing required under the two-part test for ineffective assistance set forth in *Strickland*. Because defendant's argument that his plea was not voluntary or intelligent was premised on his assertion that counsel rendered ineffective assistance, this argument necessarily fails as well. Defendant otherwise fails to demonstrate that, given the totality of the circumstances noted above, his plea was not voluntary or intelligent. *See In re Sealed Case*, 283 F.3d 349, 352 (D.C. Cir. 2002) (noting Court looks "to the 'totality of the circumstances' to determine if the plea was properly accepted" and considers factors including the judge's inquiry, the defendant's level of intelligence, whether he was represented by counsel, the complexity of the charge against him, and his own statements at the plea hearing).

For the foregoing reasons, the Court will deny the Motion to Set Aside, Vacate, and Reverse Judgment of Conviction, pursuant to 28 U.S.C. § 2255 [ECF No. 25]. Additionally, because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," *United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996), the Court will deny the Motion for an Evidentiary Hearing [ECF No. 40]. *See id.* ("A judge need not conduct an evidentiary hearing before denying a petition for relief under § 2255 when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"). An appropriate order will accompany this opinion.

March 25th, 2016

_____
Thomas F. Hogan
Senior United States District Judge